FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

01 SEP 26  AM 9: 46

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **CURTIS SMITH**, a minor, who sues by and through his mother and next friend, **JOYCE SMITH**, | ) ) ) |
| | ) |
| *Plaintiff*, | ) ) |
| | ) |
| v. | ) ) ) |
| | ) |
| **DON SIEGELMAN**, *et al.*, | ) ) |
| | ) |
| *Defendants*. | ) |

ENTERED

SEP 2 6 2001

Civil Action Number
**CV-00-C-3429-W**

### MEMORANDUM OPINION

Plaintiff Curtis Smith, by and through his mother and next friend, Joyce Smith, has sued Defendants for violations of 42 U.S.C. §§ 1983 and 1985, and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Plaintiff also seeks to have Code of Alabama § 26-14-8(b) and Alabama Administrative Code § 660-5-34-.07 declared unconstitutional.

For the reasons that follow, the Court will dismiss Plaintiff's claims against Defendants Don Siegelman, Bill Pryor, Bill Fuller, Tony Petelos, Lucy Gallman, Patricia Muscolino, Rose G. Shadwrick, Margaret Smith and Sharon Mintz in their official capacities for damages and retroactive injunctive relief. They are, however, subject to suit under § 1983 in their individual capacities for monetary relief. The Court will dismiss Hale County, Alabama.

Additionally, the Court will dismiss Plaintiff's claims under 42 U.S.C. § 1985, the Fifth Amendment, and the Sixth Amendment for failure to state a claim upon which relief can be granted.

1

notified Plaintiff, a minor,[1] that DHR was investigating him for the alleged sexual abuse of Deidra M. Minyard, also a minor.

Lucy Gallman, a DHR employee, told Plaintiff's mother that DHR wanted to question Plaintiff. However, DHR would not allow either Plaintiff's parents or his lawyer to be present during such questioning. Therefore, DHR never questioned Plaintiff. Plaintiff's mother notified Gallman of several witnesses to the alleged child abuse. Gallman never interviewed these witnesses.

On March 15, 2000, a criminal complaint was filed against Plaintiff in Tuscaloosa County, Alabama, Juvenile Court, charging him with child sexual abuse. Plaintiff was arrested and incarcerated. On March 16, 2000, Plaintiff was served with a "Notification of Rights," which was read aloud to him and which he signed.

On June 7, 2000, Gallman and Rose G. Shadwrick, a DHR employee, wrote Plaintiff that "[o]ur investigation shows reasonable cause to believe that the report is indicated i.e. true. An indicated disposition is used when there is more evidence than not, based on the professional judgment of the social worker, that child abuse/neglect has occurred." (Compl. at 6.) The letter stated the basis for the above conclusion:

> The decision was made following an interview with the child in which she reported that you caused her to perform oral sex and you put your penis in her vagina. This incident is reported to have occurred on or about the date that the family had planned an outing to the circus which was canceled due to bad weather. Other interviews were conducted with family members, professionals and collaterals.

(*Id.*)

On June 14, 2000, Plaintiff requested an administrative hearing with the opportunity to present testimony and to conduct cross-examination. On July 12, 2000, DHR notified Plaintiff that

---

[1] Hale County Department of Human Resources ("DHR") notified Plaintiff in care of his parents.

an independent panel would review the record.

On September 25, 2000, DHR sent a letter to Plaintiff stating that the independent panel found enough credible evidence to support a finding of "indicated," thereby affirming DHR's prior finding. The letter further stated that the report of "indicated" will be entered into DHR's Central Registry on Child Abuse and Neglect.

Pursuant to section 26-14-8(b) of the Alabama Code, the written report and the record of the final disposition of the report in DHR's Central Registry is available:

(1) To permit their [the records'] use to prevent or to discover abuse or neglect of children through the information contained therein; or
(2) For investigation of child abuse or neglect by the police or other law enforcement agency; or
(3) For use by a grand jury upon its determination that access to such reports and records is necessary in the conduct of its official business; or
(4) For use by a court where it finds that such information is necessary for the determination of an issue before the court; or
(5) For use by any person engaged in bona fide research who is authorized to have access to such information by the Commissioner of the State Department of Pensions and Security; or
(6) For use by any person authorized by a court to act as a representative for an abused or neglected child who is the subject of a report; or
(7) For use by a physician who has before him a child whom he reasonably suspects may be abused or neglected; or
(8) For use by an attorney or guardian ad litem in representing or defending a child or its parents or guardians in a court proceeding related to abuse or neglect of said child.

ALA. CODE § 26-14-8(b); *see also* ALA. ADMIN. CODE r. 660-5-34-.07(d). In addition, section 660-5-34-.07-(d)(9) of the Administrative Code allows the records to be released

[u]pon approved request, to an employer or potential employer of an employee where the employment involves care or supervision of children or other vulnerable persons. . . . This would include a public or private child-care agency, center or institution in clearing persons who are applying for employment or to be foster or adoptive parents. This would include organizations such as Boy Scouts, Girl Scouts, summer camp programs, YMCA, etc.

## II. APPLICABLE LAW

### A. The Eleventh Amendment & 42 U.S.C. § 1983

Under the Eleventh Amendment, a State, its agencies, and its officials have sovereign immunity, unless the State has consented to suit. *See, e.g., Florida Dept. of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981) (per curiam).

While the State, its agencies and officials may not be sued for monetary or retroactive injunctive relief for alleged constitutional violations, a plaintiff may sue for prospective injunctive relief.[2] *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974); *Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* and *Edelman*, however, do not affect immunity for alleged state law violations. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104-05 (1984).

Under 42 U.S.C. § 1983, any person who, while acting under color of state law, subjects any citizen to a deprivation of rights, privileges, or immunities secured by the U.S. Constitution violates § 1983. Neither States, nor arms of the State, nor State officials sued and acting in their official capacities are liable for monetary damages in federal or state court under § 1983. *See Hafer v. Melo*, 502 U.S. 21, 23 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

However, a plaintiff seeking prospective injunctive relief may sue the State, arms of the State, and State officials acting in their *official* capacities under § 1983 for alleged constitutional or federal law violations. *Will*, 491 U.S. at 71 n.10. Additionally, State officials sued in their *individual* capacities, even though acting in their official capacities, may be sued for monetary damages (are considered "persons") under § 1983. *Hafer*, 502 U.S. at 23. State officials sued in

---

[2]Under § 38-2-8 of the Alabama Code, Departments of Human Resources are state agencies. *See Brown v. East Central Health Dist.*, 752 F.2d 615, 617 (11th Cir. 1985) (determining whether an entity is an arm of the state is governed by state law); *see also Mitchell v. Davis*, 598 So. 2d 801 (Ala. 1992).

their individual capacities may assert personal immunity defenses, such as objectively reasonable reliance on existing law. *Id.* at 25. This brings up the issue of qualified immunity.[3]

## B. Qualified Immunity & Fourteenth Amendment Due Process

State officials are entitled to the defense of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1981).

In analyzing the qualified immunity affirmative defense, courts "first ask if a plaintiff has asserted the violation of a constitutional right at all, and [second] assess whether that right was clearly established at the time of a defendant's actions." *The Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir. 1995) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

A clearly established constitutional right is one in which the contours are sufficiently clear that a reasonable official would understand that what he or she is doing violates the law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In *Lassiter v. Alabama A & M Univ., Bd. of Tr.*, 28 F.3d 1146 (11th Cir. 1994), the Eleventh Circuit explained the stringent standard that must be met before a right is deemed "clearly established":

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing,' violates federal law.

*Lassiter*, 28 F.3d at 1149 (quoting *Anderson*, 483 U.S. at 640). *See also Courson v. McMillian*, 939 F.2d 1479, 1497-98 (11th Cir. 1991) (holding that only the Supreme Court or the Eleventh Circuit or, in some instances, a state's highest court, can clearly establish the law for qualified immunity for the Eleventh Circuit).

---

[3]*See* Part II.B., *infra*.

5

The Eleventh Circuit further explained that it is not enough that a general right be established; courts also must consider the particular circumstances of the case. *Lassiter*, 28 F.3d at 1150. *See also Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989) (stating that whether a right is "clearly established" is a question to be defined at a specific, factually defined, level).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 569 (1972).

While the Supreme Court has not defined exactly what "liberty" under the Fourteenth Amendment encompasses, it has held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see also Board of Regents*, 408 U.S. at 573. However, in *Paul v. Davis*, 424 U.S. 693, 708-09 (1976), the Court elaborated on the holding in *Constantineau* and now requires stigma plus something more—a change in legal status, the deprivation of a right. *Davis*, 424 U.S. at 708-09.

In *Constantineau*, the plaintiff sued to have a Wisconsin statute declared unconstitutional. 400 U.S. at 434. The statute caused to be posted in all retail liquor outlets in Hartford a notice prohibiting sales or gifts of liquor to any person who "by excessive drinking" exhibits specified traits, such as exposing him/herself or endangering the peace of the community. *Id.* at 433-34 (quoting WIS. STAT. § 176.26 (1967)). The chief of police in Hartford posted such a notice declaring that the plaintiff was prohibited from being sold or receiving alcohol. *Id.* at 436. The plaintiff was not provided with notice or a hearing. *Id.* The Court held that although the State has the power to deal with such evils as described in the statute, it must provide appropriate due process safeguards. *Id.*

6

In *Davis*, the Court found that the police chief's distribution of flyers containing the caption "Active Shoplifters" and the plaintiff's name and photograph, along with the names and pictures of other accused shoplifters, did not implicate the plaintiff's protected liberty interests sufficient to invoke procedural due process protections. 424 U.S. at 702-07. There must be more than mere defamation by a State official, and the State did not deprive the plaintiff of any rights. *Id.* at 701-02.

*Davis* also re-visited *Constantineau* to find that in *Constantineau*, it was not only the "posting" of the flyer of the plaintiff as a person who drinks excessively and to whom no alcohol should be made available, but it was also the deprivation of her right to purchase or acquire alcohol that constituted infringement upon a protected liberty interest. 424 U.S. at 708-09 ("[T]he governmental action taken in that case [*Constantineau*] deprived the individual of a right previously held under state law . . . The 'stigma' resulting from the defamatory character of the posting was doubtless an important factor in evaluating the extent of harm worked by that act, but we do not think that such defamation, standing alone, deprived Constantineau of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment.").

Other Supreme Court cases defining what constitutes a liberty interest with respect to stigma include *Goss v. Lopez*, 419 U.S. 565, 574-75 (1975) (holding that a student's suspension from school implicated procedural due process where he was charged with misconduct, (1) which could seriously damage his reputation, and (2) whose disciplinary measures (e.g., suspension) could affect his right under Ohio law to attend school); and *United States v. Lovett*, 328 U.S. 303, 314 (1946) (finding unconstitutional an Act of Congress that specifically forbade payment of any salary or compensation to three named Government agency employees because the Act stigmatized the employees' reputations and impaired their chances to earn a living).

Once liberty interests have been implicated, due process requires that the State afford "notice

7

and opportunity for hearing appropriate to the nature of the case." *Board of Regents*, 408 U.S. at

570 n.7 (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)). "The fundamental requirement of due

process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*

*v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In *Mathews*, the Court outlined three distinct factors that determine whether the

administrative procedures provided are constitutionally sufficient:

[(1)] the private interest that will be affected by the official action; [(2)] the risk of
an erroneous deprivation of such interest through the procedures used, and the
probable value, if any, of additional or substitute procedural safeguards; and [(3)] the
Government's interest, including the function involved and the fiscal and
administrative burdens that the additional or substitute procedural requirement would
entail.

424 U.S. at 334.

## III. ANALYSIS

### A. Defendants have Eleventh Amendment immunity from suit in their official capacities with respect to monetary and retroactive injunctive relief.

Defendants Don Siegelman, Bill Pryor, Bill Fuller, Tony Petelos, Lucy Gallman, Patricia

Muscolino, Rose G. Shadwrick, Margaret Smith, and Sharon Mintz are immune from suit in their

official capacities under the Eleventh Amendment for monetary and retroactive injunctive relief.

Plaintiff may pursue his § 1983 claims against them for prospective injunctive relief only.

### B. Plaintiff has a constitutionally protected liberty interest.

The Court finds that Plaintiff has a constitutionally protected liberty interest in not being

stigmatized a child sex abuser and having this information released to members of the public,

pursuant to § 26-14-8(b) of the Alabama Code and § 660-5-34-.07(d) of Alabama's Administrative

Code, which could affect his future employment and other legally protected rights.

Clearly, Plaintiff is subjected to stigma sufficient to meet the first prong of the "protected

8

liberty interest" test. DHR's records are available to police or other law enforcement agencies investigating possible child abuse or neglect; to a grand jury, if the record is necessary in the "conduct of its official business;" to a court, where such information is necessary in the determination of an "issue before the court;" to any person engaged in bona fide research and authorized by the Commissioner of the State Department of Pensions and Security; and to an employer or potential employer where the employment involves care or supervision of children or other vulnerable persons. *See* ALA. CODE § 26-14-8(b) and ALA. ADMIN. CODE r. 660-5-34-.07(d) for a full list of who may receive Plaintiff's record.

The record of Plaintiff as a child sex abuser to these people (and to all of the people to whom they may release such information) creates the stigma of Plaintiff having been branded a child sex abuser—a sexual deviant exploiting vulnerable children.

Plaintiff also meets the second prong of the test articulated in *Davis*: His status will be altered; his rights are affected. If Plaintiff were to choose to teach elementary or secondary school, to work in daycare, to work with the Boy Scouts, to join law enforcement, to gain custody of children he may have, DHR's record of him as a child sex abuser would negatively impact (or prevent) his ability to work in these positions and his custody rights as a parent. Just as in *Constantineau*, where the *Davis* Court explained that the plaintiff's right to "purchase or obtain liquor" at some point in the future had been affected in addition to her stigmatization, Plaintiff's ability to pursue the employment of his choice, among other rights, is affected.

C. Plaintiff did not receive sufficient procedural due process.

The state may only stigmatize Plaintiff as a child sex abuser and affect his rights after first providing him with appropriate procedural due process. The Court finds that Plaintiff was entitled to substantially more process than he received. Certainly, Plaintiff's private interest will be affected

9

his classification as a child sex abuser in DHR's records—information to which various segments of the public have access. Second, additional procedures, such as allowing Plaintiff the opportunity to present witnesses and cross-examine the State's witnesses, would clearly minimize the risk of erroneously depriving him of his liberty interest. Finally, a hearing including such additional safeguards would not be overly burdensome to the State, particularly in light of Plaintiff's substantial interest in receiving a meaningful hearing. *See Mathews*, 424 U.S. at 334.

       D. Defendants are not entitled to the qualified immunity affirmative defense.

       Plaintiff has clearly asserted the violation of a constitutional right, his Fourteenth Amendment right to due process. *The Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir. 1995) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)); *see also* Part III.B., *supra*.

       Likewise, Plaintiff has asserted a right that was "clearly established" at the time of Defendants' actions. As early as 1946, when the Supreme Court held unconstitutional in *Lovett* a Congressional Act that specifically forbade three named Government employees from salary and compensation because the Act stigmatized the employees' reputations and impaired their chances to earn to living; through 1971, when the Supreme Court held in *Constantineau* that the plaintiff was entitled to due process before being publicly branded an alcohol abuser and denied access to alcohol; and into 1975, when the Supreme Court held in *Goss* that a student's suspension from school implicated procedural due process where he was charged with misconduct, which could seriously damage his reputation, and where he had a right under Ohio law to attend school which was affected by his suspension, the Supreme Court of the land has held that a plaintiff must show stigma, plus some change in status or injury to a right.

       The facts of this case squarely fit into the Court's precedent. In *Constantineau*, the plaintiff was prevented from acquiring alcohol, if she were to so choose. In the case at bar, Plaintiff is

that Plaintiff was not afforded sufficient procedural due process.

As such, Defendants Don Siegelman, Bill Pryor, Bill Fuller, Tony Petelos, Lucy Gallman, Patricia Muscolino, Rose G. Shadwrick, Margaret Smith, and Sharon Mintz are subject to suit under § 1983 in their individual capacities. They are immune in their official capacities for all but prospective injunctive relief.

Done this 26th day of September, 2001.

Chief United States District Judge
U.W. Clemon

12